ELIJAH J. RANKIN et al., Respondents, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, June 28, 1910.

1. **RAILROADS: Construction Lien: Laborers or Sub-contractors: Facts Stated.** An arrangement by which a firm was employed by sub-contractors by the day to clear and grade the roadbed for a railroad, with no definite understanding what compensation would be paid for each kind of service they would render, but with the understanding they should receive reasonable and customary rates and such as the sub-contractors were paying for like services, was a contract of employment, and was neither an assignment by the sub-contractors nor a sub-contract with them to do a specific part of the work they had agreed to do, within the meaning of a contract entered into between the contractor and the sub-contractors, providing that all sub-contracts should be written on forms identical with the original contract and that the contract should not be assigned nor any portion of the work sub-contracted without the consent of the chief engineer of the railway company; and the firm of laborers could maintain a lien action against the railroad company under section 4239, Revised Statutes 1899, for the work done under said arrangement.

2. **APPELLATE PRACTICE: Reversal: Appellant Must Establish Error.** An appellant must establish error to obtain a reversal, as all presumptions are indulged in favor of the judgment below.

3. **RAILROADS: Construction Lien: Estoppel.** Where a railroad contractor, in making a payment to sub-contractors, leaves both a balance due them equal to the amount of a lien claimed by laborers employed by the sub-contractors, and a balance of lienable demands due from the sub-contractors, equal to the same amount, the laborers are not estopped, in a lien action against the railroad company, to claim the lien because the sub-contractors misapplied the payment, by failing to apply it in payment of labor debts, though a member of the firm of sub-

contractors was also a member of the firm of laborers, since the railroad company, in such case, would be liable, in any event, for the amount of the laborer's lien.

4. ———: ———: **Effect of Overcharges.** Under section 4247, Revised Statutes 1899, the unintentional omission of a proper credit from a statement of a lien against a railroad company for labor will not defeat the lien.

Appeal from Clark Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

Affirmed.

*T. L. Montgomery* for appellant.

(1) The plaintiff is not entitled to a lien on the defendant railroad for the reason that it had no written contract with Rankin & Willard, sub-contractors, to perform the services rendered. R. S. 1899, sec. 4239. Isenman v. Fugate, 36 Mo. App. 166; 2 Jones on Liens (1 Ed.), secs. 1265; Schroeder v. Galland, 134 Pa. St. 277, 19 Am. St. Rep. 691; Kelly v. Guar. & Accident Co., 97 Mo. App. 626; Curran v. Downs, 7 Mo. App. 329; Clark v. Laird, 60 Mo. App. 289. (2) The petition and lien claim purports to give the counties in the State through which the defendant railway runs, includes Clay county, through which it does not run and omits Ray county, through which it does run. The petition and lien therefore does not cover the whole of the roadbed in the State, and this is fatal to a recovery. Timber Co. v. Railroad, 180 Mo. 454, 23 Am. and Eng. Ency. Law (2 Ed.), p. 220 and cases cited. Knapp v. Railroad, 74 Mo. 374; Cranston v. Trust Co., 75 Mo. 29; Bethune v. Railroad, 149 Mo. 587. (3) The plaintiffs cannot recover because they have intentionally failed to give credits for money paid to which the account was and is justly entitled. It is not a just and true account and plaintiff cannot recover. R. S. 1899, secs. 4247; Uthoff v. Gerhard, 42 Mo. App. 256; Schroe-

der v. Mueller, 33 Mo. App. 33; McWilliams v. Allen, 45 Mo. 574; Coe v. Ritter, 86 Mo. 286. (4) Even though plaintiffs had a valid special contract and it was not unreasonable and unjust and free from fraud, they cannot recover for the reason, that they have been paid by the construction company. Nelson v. Wethrow, 14 Mo. App. 280; Brick Co. v. Sarding, 68 Mo. App. 16; 2 Jones on Liens (1 Ed.), sec. 1309; French v. Bauer, (N. Y. C. App.) 20 L. R. A. 560; Lumber Co. v. Christophel, 59 Mo. App. 80; Glass Plant Co. v. Mill Co., 130 Mo. App. 474; Post v. Campbell, 83 N. Y. 279; Lauer v. Dunn, 115 N. Y. 405; Bowen v. Auberry, 22 Cal. 566. (5) The judgment rendered is erroneous, excessive and in conflict with the declaration of law given for the plaintiffs and cannot stand. Deck's Admr. v. Feld, 38 Mo. App. 681; Dury v. Merriman, 45 Mo. 501; Roman v. Trading Co., 87 Mo. App. 192; Payne v. Railroad, 129 Mo. 405; Hickman v. Railroad, 22 Mo. App. 352.

*Brown & Soule* and *O. S. Callihan* for respondent.

(1) In proceedings under the statute to obtain a lien upon the property of which a railroad consists it is sufficient to describe it in the lien papers and petition by giving the name of the railroad owning it. No other description is required. Sec. 4241, R. S. 1899; Knapp v. Railroad, 74 Mo. 374; Bethure v. Railroad, 149 Mo. 587. (2) As to the contract of employment between the firm of Rankin & Willard and the firm of Rankin & Son, of both of which E. A. Rankin was the senior member, each of these partnerships was a separate and distinct legal entity from their individual members, and the contract between them created the same rights and obligations that would have existed if the contract had been made between two partnership firms whose individual members had no connection with the other.

Kelly v. Guarantee Co., 97 Mo. App. 623; 1 Bates on Partnership (1 Ed.), secs. 170-173; 1 Lindley on Partnership (2 Ed.), pp. 636, 637.

GOODE, J.—May 15, 1906, defendant entered into a contract with the General Construction Company of Davenport, Iowa, to do "all the grubbing, clearing, grading, and to furnish all materials, unless otherwise specified, and to do and supply all other things requisite and necessary to complete the roadbed and prepare the same ready for receiving the superstructure upon that portion of the railway of the company known and designated as the 'Missouri Division,' for second track between the stations of Nixon and Wyaconda, including change of line." Said contract between defendant and the General Construction Company contained this paragraph: "(8) The work shall be performed under the personal supervision of the contractor, and the contract shall not be assigned, nor shall any portion of the work be sub-contracted without the written consent of the chief engineer of the company. All sub-contracts shall be written on forms identical in terms and provisions with this contract, and a duplicate original sub-contract properly executed by the parties shall be delivered to the chief engineer of the company at the time of his written assent thereto. The contractor shall remain responsible to the company for the proper performance and completion of the work, notwithstanding any such sub-contracts."

May 26, 1906, the General Construction Company entered into a contract with E. A. Rankin and W. L. Willard, doing business under the firm name of Rankin & Willard of Monmouth, Ill., for the same work described in the contract between defendant and the General Construction Company, and it may be said the contract between defendant and the General Construction Company was identical in every way with that between the Construction Company and Rankin & Wil-

lard, except the difference in dates, and that the prices said company agreed to pay Rankin & Willard were about half those the railroad company had agreed to pay the Construction Company. Otherwise the two contracts contain the same provisions, including paragraph 8 above quoted. This action was instituted by E. A. Rankin and Earl Rankin, father and son, doing business under the firm name of Rankin & Son, to enforce a lien against defendant's railroad for work done during the period from October 1, 1906, to January 14, 1907, with teams, wagons, wheelers, excavators, and other implements, and by drivers, machine operators, and common laborers in plaintiff's employ, the total amount claimed being $6353. E. A. Rankin was senior member of the firm of Rankin & Willard, and also. of the firm of Rankin & Son, the former holding the subcontract under the General Construction Company, and R. D. Seymour was a silent partner in said firm, his interest being one-third of the profits on all work sublet by Rankin & Willard.

The petition in the present case alleges plaintiffs, E. A. Rankin and Earl Rankin, composing the firm of Rankin & Son, were employed by Rankin & Willard to do the work of excavating, grading, plowing, removing earth, and making embankments on defendant's roadbed and right of way where same passes through section fourteen and east part of section 15, township 66, range 7 west, in Clark county, to do said work by the use of laborers, two-horse teams, scrapers, wagons, wheelers, an excavating machine, plows, and other implements; that said Rankin & Willard agreed and contracted with plaintiff to pay as follows: For each two-horse team and driver used with plows, scrapers, wheelers, wagons, and excavating machine, the sum of 50 cents an hour, and for the use of said excavating machine, the sum of $1 an hour; that on and after the 1st day of December, 1906, plaintiffs were to be paid 65 cents an hour for each two-horse team and driver.

The petition alleges, further, plaintiffs, pursuant to said contract, began the work October 1, 1906, with a large force of laborers, teams, wagons, scrapers, wheelers, and an excavating machine and continued in performance from said date to and including January 14, 1907; that the value of said work and the amount justly due plaintiffs therefor was $6353. E. A. Rankin, the senior member testified a contract was made between the two firms. In truth, whatever contract was formed was made by him in person, he acting for the firm of Rankin & Willard and likewise for Rankin & Son. The testimony of the son shows he knew nothing about the terms of the contract, took his father's word that an arrangement had been made, and went to work with laborers, machines, wagons, and teams. E. A. Rankin testified he personally made the contract, representing the firm of Rankin & Willard, with himself, representing the firm of Rankin & Son; did this prior to October 1, 1906, in Illinois before he and his son came to Missouri to go to work, and then spoke to his son about it. Notwithstanding Willard's and Seymour's denial of the contract, it is plain they knew the firm of Rankin & Son was doing grading and other work called for in the contract between Rankin & Willard and the Construction Company continuously from October 1, 1906, to January 14, 1907, and acquiesced in the arrangement, understanding the firm of Rankin & Willard was to pay Rankin & Son for what the latter did, though it does not appear there was a definite agreement about the compensation for each species of work; that is, what was done by common laborers, by excavating machines, by wagons and teams, and by scrapers, and a trifling controversy arose in December after the work had been going on for nearly three months, about the compensation for the work of a wagon and team of two horses, which controversy resulted in an agreement the remuneration for said service should be $5 a day. Willard testified no contract was made by Rankin & Son

with him, but despite that statement it is clear from his own testimony he assented to Rankin & Son using their laborers and implements, and so did Seymour. The reality of the contract between Rankin & Willard and Rankin & Son, appears to have been about this: Rankin & Willard needed laborers and implements to carry out their contract with the General Construction Company, and as a separate firm employed laborers, wagons, teams, and other implements. E. A. Rankin and his son owned a lot of teams and implements and he told his son to put them to work grading, and to hire a lot of laborers. This work was carried on by Rankin & Son with the knowledge and approval of Willard and Seymour, or at least without their objection, from October 1, 1906, until the middle of January, 1907. There was a conflict in the evidence regarding whether Rankin & Son were paid anything for their work by Rankin & Willard, the positive testimony of Earl Rankin, who kept the books of both concerns, being that nothing was paid on the account involved in the present action.

The whole case is presented in the record in the vaguest way and business seems to have been carried on by the two firms in a slipshod and careless manner. Earl Rankin kept books for and paid the laborers of both firms, and there is uncertainty in the present record as to whether certain transactions occurred in the business of Rankin & Willard or in that of Rankin & Son. One issue is whether the sum disbursed in December, 1906, by Rankin & Willard was used to pay for labor of that firm or was paid to Rankin & Son for part of the work covered by the present lien account.

The evidence tends cogently to prove said sum was paid and should go as a credit on the lien claim, but there was positive testimony against this view, and that nothing ever was paid on the account; hence so far as the truth of the fact is concerned, we must defer to the finding of the court below. On January 26, 1907, A. F.

Cutter, secretary and treasurer of the Construction Company, paid E. A. Rankin, $10,299.58 and said Rankin agreed at the time to pay with it laborers who were working either manually or with machinery and teams for Rankin and Willard. He took the money, promising to go at once to the railway and pay said debts, but instead went to Monmouth, Illinois, and deposited the money in the Monmouth Trust & Savings Bank, which applied it on an overdraft of $28,000 Rankin & Willard owed the bank. Rankin appears to have gone to Monmouth with no intention to deposit the money, but when he arrived there he was pursued by the bank for its demand until he consented to turn the money over in part satisfaction of the overdraft. Three defenses were interposed by the answer: first, a general denial; second, plaintiff, long prior to the institution of the suit, had been fully paid for the services itemized in the lien account; third, the contract between the firm of Rankin & Willard and the firm of Willard and Son, was attempted to be made by E. A. Rankin, a member of both firms, in violation of the contract between Rankin & Willard and the General Construction Company, which, as already stated, is identical with the paragraph we have quoted from the contract between the Construction Company and defendant. Rankin testified the ten thousand dollars and upward paid by said company in January, 1907, did not pay the entire amount the Construction Company owed Rankin & Willard for work; that there was still a balance owing, not stating how much, and he had been unable to obtain a statement from the company or a settlement with it. It should be said the contract between defendant and the General Construction Company provided the defendant might retain each month ten per cent of what was due Construction Company for work to the date of payment and the like stipulation was in the contract between the Construction Company and Rankin & Willard; so it appears defendant and the Construction Company to-

gether withheld somewhere between ten and twenty per cent each month of the total cost to defendant of the work. Defendant offered no evidence regarding the value of the whole amount of work done by Rankin & Willard under their contract and but little evidence of what had been paid them and none that the January payment of ten thousand dollars would suffice to discharge in full all debts Rankin & Willard owed for labor.

The court gave this declaration of law:

"The court sitting as a jury declares the law to be that for such amount as the court may find from the evidence to be due and owing to plaintiffs on their lien claim herein, plaintiffs are entitled, under the pleadings and all of the evidence in the cause, to a lien therefor, against the roadbed, station houses, depots, bridges, rolling stock, real estate and improvements of defendant's said Atchison, Topeka & Santa Fe Railway, situated and being in the State of Missouri, and the finding and judgment of the court should establish and declare such lien against the said property for said amount."

These requests were given for defendant:

"The court declares the law to be that if the court finds from the evidence in the cause that the General Construction Company on the 26th day of January, 1907, paid to E. A. Rankin, for the firm of Rankin & Willard, a sum of money sufficient to pay their labor claims, including the claim sued for herein, and that the said E. A. Rankin, of Rankin & Willard did not so apply the said money in discharge of their said labor claims, then the firm of Rankin & Son, the plaintiff herein, had full knowledge of the misappropriation of said funds, and cannot recover in this action and the verdict will be for defendant.

"Unless the court shall find and believe from a preponderance of the evidence in the cause that plaintiffs had a contract with Rankin & Willard to do work

claimed in the lien account, the verdict will be for defendant.

"Before the court sitting as a jury can find for the plaintiff in this cause he must find and believe from a fair preponderance of the evidence in the cause that the plaintiff within ninety days next after the completion of the work, filed in the office of the clerk of the circuit court of Clark county, Mo., a just and true account of the amount due after all just credits have been given in which he has stated the amount claimed as due, the general nature of the work and labor performed, the dates when said work was done and the place or places where it was performed, the name or names of the parties with whom the contract for said work was made, the name of the defendant railroad, and fully described the railroad in the State against which the lien was intended to apply, and that plaintiff has within said ninety days served a copy of said account on the person or corporation owning said railroad on which the lien is intended to apply and that suit was commenced on said account, within ninety days after the filing of said account with the clerk of the circuit court, and unless the court so finds, the verdict will be for the defendant.

"The court declares the law to be that if the court shall find and believe from the evidence in this cause that E. A. Rankin, a member of the plaintiff co-partnership, and a member of the firm of Rankin & Willard, was paid by the secretary of the General Construction Company on the 26th day of January, 1907, for the firm of Rankin & Willard, sub-contractors herein, at the request of said E. A. Rankin and under the promise from him to use it to pay the claims for services rendered under said Rankin & Willard, and it was sufficient to discharge said claim, the verdict will be for the defendant, even though the court may find and believe from the evidence it was not so used."

The court refused the following requests for defendant:

"The court sitting as a jury declares the law to be that under the evidence in this cause the plaintiff cannot recover and the verdict will be for the defendant.

"The court declares the law to be that the claim for a lien herein does not cover the whole of defendant's railroad in this State and the verdict must be for defendant.

"If the court finds from the evidence that E. A. Rankin made the agreement with the firm of Rankin & Willard, as a member of plaintiff's firm, and as such contracted with each of said firms by the terms of which the plaintiff was to work for said firm of Rankin & Willard, then the plaintiff had full knowledge that a sub-contractor could not create a contract unless it was reduced to writing and approved by the company's chief engineer, and the verdict will be for the defendant.

"The court declares the law to be that if the court finds from the evidence in the cause that the plaintiff did not enter into a contract in writing with the firm of Rankin & Willard, and that the same was not approved by the company's chief engineer, that plaintiffs are not sub-contractors, and the verdict should be for the defendant."

Defendant has not opposed the enforcement of the lien on the theory that the arrangement between Rankin & Willard and Rankin & Son was one between two firms having a common member, therefore not valid at law, but only in equity, and only to be enforced in a proceeding in the nature of a suit in equity; hence we will decide nothing regarding the validity of the arrangement in that regard, but merely advert to the subject and cite some pertinent cases. [1 Story, Eq. Jur., sec. 679 et seq.; Crosby v. Timolat, 50 Minn. 171, 52 S. W. 526; Cole v. Reynolds, 18 N. Y. 74; Schnebly v. Culter, 22 Ill. App. 87; Willis v. Barron, 143 Mo. 450, 45 S. W. 289, 65 Am. St. Rep. 673.] Counsel for defendant insists the arrangement was invalid because it contravened paragraph 8 of the written contracts be-

tween defendant and the General Construction Company and between the latter and Rankin & Willard, in being verbal instead of in writing, and in lacking the consent of the chief engineer of the railroad company. The gist of this contention cannot be understood except in connection with a section of the railway lien law. Liens against railways are allowed in favor of persons doing work in constructing and improving road-beds, station houses, etc., or furnishing materials for them, "provided such work and labor is performed and such material is furnished under and in accordance with a contract with such railway company, its agents, contractors, sub-contractors," etc. [Revised Statutes 1899, section 4239, Ann. St. 1906, p. 2324.] Counsel says that proviso defeats the lien in the present case because there was no contract, or no valid one, between Rankin & Willard and Rankin & Son, since the arrangement between them was in violation of paragraph 8 aforesaid of the two written contracts; and this proposition requires us to ascertain the meaning of the paragraph and determine whether the arrangement between Rankin & Willard and Rankin & Son was either an assignment to the latter of the contract between Rankin & Willard and the Construction Company, or a sub-contract let by Rankin & Willard for the performance of part of the work they had agreed with said company to perform.

The paragraph prevented Rankin & Willard from assigning their contract or letting any part of it to a sub-contractor without the written consent of the chief engineer of the company, and prevented them from entering into a verbal sub-contract; for it declared all sub-contracts should be written in terms identical with the contract between the General Construction Company and Rankin & Willard, and declared a duplicate of the sub-contracts should be delivered to the chief engineer of the company when he gave his written assent to them. Whether the chief engineer of the rail-

way company or of the General Construction Company was meant is not indicated directly; but that uncertainty does not affect the present case, and has been adverted to merely in connection with the statement that neither of the two written contracts refers to the other, and to suggest it might be difficult to hold that defendant, which was a party only to the contract with the General Construction Company, can avail itself of a defense based on a term of the contract between the Construction Company and Rankin & Willard, to which defendant is a stranger. We will not rest our decision of the point in hand on that circumstance, for we hold the arrangement between Rankin & Willard and Rankin & Son was not of the kind paragraph 8 said must be in writing and validated by the written consent of the chief engineer of either defendant or the Construction Company. Said arrangement was neither an assignment by Rankin & Willard of their contract with the Construction Company nor a sub-contract with the firm of Rankin & Son to do a specific part of the work Rankin & Willard had agreed to do. Properly regarded, Rankin & Son were simply employed to perform work in clearing and grading the roadbed, as other men having wagons, teams, and implements were. As we have stated, Rankin & Son with their teams, wagons, and implements were employed by the day with no definite understanding what compensation would be paid for each kind of service they would render, but with the understanding they should receive reasonable and customary rates and such as Rankin & Willard were paying for like services. They were to work in the vicinity of the station of Dumas, but it was not agreed any particular portion of the roadbed should be built by them. Paragraph 8 did not mean Rankin & Willard should enter into a written contract with every person they hired for manual, machine, or team labor on the dump; and such were the tasks of Rankin & Son.

Because E. A. Rankin agreed with the Construction

Company when the $10,000 was paid him January 26, 1907, to apply it in satisfaction of labor debts the firm of Rankin & Willard owed, and because said Rankin was a member of the firm of Rankin & Son, and as plaintiff is seeking in the present case to enforce a lien for labor, it is insisted an estoppel ought to be allowed against the lien; that instead of carrying out his agreement with the Construction Company, Rankin turned the money over to the Monmouth Trust & Savings Bank to pay an overdraft Rankin & Willard owed the bank, thereby leaving the railway exposed to liens it would have been protected from, had the money been applied as agreed. One paragraph of the contract between the Construction Company and Rankin & Willard required the latter to pay all sub-contractors, materialmen, and laborers promptly, whenever payments were made by the Construction Company to Rankin & Willard; also required them to prevent liens being filed against the railway company (paragraph 24). Therefore the General Construction Company was entitled to have the payment of January 26th used by Rankin & Willard to pay their labor debts in order to prevent liens from being filed against the railway. If it appeared the payment would have satisfied the lienable indebtedness of Rankin & Willard, possibly the estoppel would be allowed; for in that event the railway company was injured by Rankin, Sr., using the money to pay the debt his firm owed the Monmouth Bank. To determine this point it would be necessary to determine whether the railroad company could raise an estoppel on a promise of Rankin to the Construction Company, or on the contract between Rankin & Willard and said company, a question we will not go into because the case may be decided without doing so. Rankin & Willard would not be entitled in any event to compensation beyond what they had agreed to accept for the work they undertook to do, and it was their obligation to keep the cost of said work within the limit of the sum they would receive

from the Construction Company; at least it was their obligation to prevent liens being filed for any excess of cost beyond what they had agreed to do the work for, if, perchance, the cost of the work did exceed said sum. Therefore, if the payment of January 26th had discharged in full what was due Rankin & Willard under the contract, E. A. Rankin would have no right, as a member of the firm of Rankin & Son, to maintain the present lien; that is to say, his assertion of the lien would be contrary to his obligation under the contract with the Construction Company; wherefore he ought to be held estopped to assert it.

But the proof touching this issue is that the January payment was neither for the full amount the Construction Company owed Rankin & Willard, nor sufficient to discharge the lienable demands said firm owed. E. A. Rankin testified, saying he had been unable to get the Construction Company to settle with him. Defendant introduced no evidence on the issue, though it looks like evidence would have been accessible to prove the payment was in full of what the Construction Company owed Rankin & Willard, or was enough to satisfy the lienable demands said firm' owed. Defendant should have introduced the proof needed to make its defenses good; and having appealed, it must establish error in order to obtain a reversal, as all presumptions in favor of the judgment below will be indulged. If the January payment, instead of discharging the indebtedness of the Construction Company to Rankin & Willard, or suffi-cing for the payment of lienable demands the firm owed, left both a balance due them from the Construction Company equal to the amount involved here, and which said company refused to pay, and a balance of lienable demands due from Rankin & Willard, equal to the same amount, the estoppel ought not to be allowed against plaintiffs, because the misapplication of the payment worked no harm to defendant; as defendant railway was subject, in any event, to a lien for the amount in-

volved here. In truth there is no basis for the defense in such a contingency, but a lien was available against defendant in favor of any person who had done work or labor or furnished material. How much more the Construction Company owed Rankin & Willard and how much said firm owed on lienable demands above the amount of the January payment, is not in proof; but it is in proof there was an excess in both classes of debts. The theory of defendant's counsel was adopted in declaring the law on this issue. The court declared that if it found as a fact the Construction Company, on January 26th, paid E. A. Rankin for the firm of Rankin & Willard, a sum sufficient to pay for labor claims, including the claim sued for, and E. A. Rankin did not apply the money in discharge of labor claims, there could be no recovery in the present case. Defendant got as favorable treatment from the court in dealing with this defense as it could ask; for the court declared the defense would have been established by showing the January payment would have satisfied all labor claims against Rankin & Willard, without regard to how much the Construction Company owed that firm. Rightly or wrongly, these declarations of law gave defendant the full benefit of Rankin's promise to the Construction Company about the use of the money.

It is contended plaintiff omitted from his account just credits for money paid. What we have already said disposes of this point; the evidence for the supposed payments being contradictory, the findings of the court must stand. There was no proof of an intentional omission of any proper credit and the lien cannot be defeated because of an unintentional omission. [R. S. 1899, sec. 4247, Ann. St. 1906, p. 2330.]

It is said the lien account and the petition misdescribed the route of the railroad by saying it ran through Clay county, and omitted to state it ran through Ray county. Both the petition and the lien account mentioned Ray county as one of the counties through which

the railway passes. Furthermore, we may say there is no testimony in the record concerning the counties where it runs.

Finding no reversible error, the judgment will be affirmed. All concur.